## In Equity.

### PENOBSCOT LOG DRIVING COMPANY

*vs.*

### WEST BRANCH DRIVING & RESERVOIR DAM COMPANY.

Penobscot.    Opinion January 11, 1905.

*Eminent Domain.    Title and "Taking."    Appraisal.    Chap. 174, Private and Special Laws 1903,   R. S. 1821, c. 45, ? 3; P. L. 1824, c. 261.*

The defendant's charter conferred upon it the right of eminent domain, and provided that, upon filing in the Registry of Deeds a written statement of its election to exercise the power so granted, all the property of the plaintiff at the date of the approval of the charter of certain enumerated kinds should be and become the property of the defendant, the value of the property so taken to be determined in case the parties did not agree by a commission of three persons to be appointed by this court on petition of either party or any person interested, and their report to be made to the court who might confirm, reject or recommit the report or submit the subject matter thereof to a new commission.

*Held:* It is not necessary to the validity of the taking that such written statement should contain any description of the property taken. The charter itself fixes the extent of the taking.

The language of the defendant's charter shows that it was the legislative intention to provide a method of procedure which would enable the plaintiff to obtain speedy compensation for the property taken from it, and a construction which admits of divided and protracted litigation is not to be favored.

The legislature having created one tribunal to settle issues of fact arising between the parties and having made no mention of any other, the appointment and action of the commission is not to be held in abeyance while the question of the plaintiff's title to certain property of the kinds enumerated is tried out at the bar of the court in this or any other proceeding.

The title and the taking are inseparable; and the power given and duty imposed upon the commission to determine the value of the property so taken, clothed it with authority, as a necessary part of that determination to decide what property was taken.

On exceptions by defendant.    Overruled.

Petition by plaintiff company for the appointment of commissioners pursuant to provisions of chapter 174, Private & Special laws of 1903, to determine the value of certain property alleged to have been owned by said company, and to have been taken by the defendant company by virtue of the right of eminent domain conferred on said defendant company by said act.

The defendant company seasonably filed its answer to the petition and denied that it had taken certain of the property specifically enumerated as alleged by the petitioner in its petition, and also denied that certain of the property alleged to have been taken is or was ever the property of the petitioner; and that inasmuch as the commissioners under said act were not authorized to determine the title to said property in dispute and were not authorized to determine as to whether the same had or had not been taken by said defendant company under said act, but were only authorized to determine the value of such property belonging to said petitioner as had been taken by defendant company under the act, commissioners should not be appointed until the disputed questions of title and of the "taking" by the defendant company should first be legally determined, for which said reasons the defendant company moved that the prayer of the

petitioner asking for the appointment of commissioners be denied.

In the court below, the motion to dismiss was overruled, and commissioners were appointed, and to this ruling the defendant company took exceptions.

The case fully appears in the opinion.

*P. H. Gillin and J. F. Gould,* for plaintiff.

*F. H. Appleton and Hugh R. Chaplin,* for defendant.

SITTING: WISWELL, C. J., SAVAGE, POWERS, PEABODY, SPEAR, JJ.

POWERS, J.    Exceptions by the defendant to the appointment of commissioners, under the defendant's charter, c. 174 of the Private and Special laws of 1903, by the justice hearing the case.

The provisions of that act so far as material to the question involved are these.    The right of eminent domain is conferred upon the defendant to the extent that it may "take and hold all the dams, real estate, piers, booms, wing dams, side dams, and steamboats," except the dam at the outlet of Millinocket lake, owned by the plaintiff at the date of the approval of the act, March 23, 1903.    The defendant may file in the registries of deeds in Penobscot and Piscataquis Counties a written statement of its determination to exercise said power of eminent domain "and thereupon said dams, real estate, etc., shall be and become the property" of the defendant together with certain powers, rights and privileges of the plaintiff which it is unnecessary to enumerate.    The value of said dams, real estate, etc., "so taken shall be determined," in case the parties shall fail to agree, by a commission of three disinterested persons to be appointed as follows: "Either of said corporations or any person interested, may file in the Clerk's office of the Supreme Judicial Court in and for the County of Penobscot, either in term time or vacation, a petition to said court for the appointment of such commission, to consist of three disinterested persons, and upon such petition, said court after such notice as said court may deem proper, shall appoint such commission.    Such commission shall as soon as may be, but after reasonable notice, hear the parties, their proofs and arguments and determine the value of

said dams, real estate, etc." The commission is to report to the court what in its judgment is a fair and just value of the dams, real estate, etc., which it is directed to appraise, and the court may confirm, reject or recommit the report or submit the subject matter thereof to a new commission. All proceedings of the court in reference to any matter raising a question of law shall be subject to exceptions.

On April 28, 1903, the defendant filed in the registry of deeds a written statement of its determination to exercise said power of eminent domain. This writing contained no description of the property taken. Neither was it necessary that it should describe it, because its charter gave the defendant no election as to what it would take. It could elect to take or not to take, but, if it took any, it must by the express terms of the act take all the property of the various kinds enumerated in the act, owned by the defendant on March 12, 1903. It is evident that no attempted description which fell short of the entire property so owned by the plaintiff could bind the plaintiff. No more specific notice of the property taken could be required by the plaintiff for its information or protection, as the plaintiff might well be presumed to know what property it owned. The act itself fixed the extent of the taking, and the defendant could take neither more nor less than all the property of the kinds named in the act owned by the plaintiff at the date of its approval.

Thereafter, the parties failing to agree upon the value of the property so taken, the plaintiff duly filed in court its petition for the appointment of a commission for that purpose, annexing thereto a schedule of the property which it claimed the defendant had taken. Plainly the plaintiff's enumeration of the property taken could not bind the defendant. It had a right to take all which the plaintiff owned at the date of the approval of the charter; it could be compelled to take no more. Accordingly, on the ground that they were not the plaintiff's property at the date of the approval of the charter, the defendant denied in its answer that it had taken certain items contained in the plaintiff's schedule, and claimed that it had taken one stone dam not therein named. Thereupon the justice hearing the cause appointed the commission against the defendant's objection, who claimed that the commission was only authorized to determine

the value of the property owned by the plaintiff and taken by the defendant, but had no power to pass upon questions involving the title of said property, or whether the same had or had not been taken by the defendant, and that its determination of those questions and all other questions of law that might arise relative to said subject matter was necessarily preliminary to an appraisal.

The legislature evidently intended that the plaintiff should have a speedy remedy to recover compensation for its property taken by the power of eminent domain. The property passed to the plaintiff by the recording, ipso facto, of its written statement of its determination. Either party or any person interested might file the petition asking for the appointment of a commission if the parties failed to agree as to the value of the property taken. After such notice as it deems proper, the court "shall appoint the commission" says the charter. The commission is to proceed "as soon as may be" to determine the value of the property taken. It is to be noted that every step, preliminary to the appointment of a commission, required by the express words of the charter has been taken. The legislature must have known that questions were likely to arise as to what property the plaintiff owned and consequently as to what the defendant had taken. When it declared that all the property of the plaintiff of certain descriptions should be taken by merely recording a statement of defendant's election to exercise the power of eminent domain, and so carefully created and minutely provided for the speedy appointment and prompt action of a tribunal to determine the value of the property so taken, did it intend that all this should be held in abeyance until another tribunal, unnamed and unknown, should try out the question of title with its possible attendant exceptions and delays? Did it intend to point out and provide for only a part, and that the last part, of the procedure necessary for the plaintiff to obtain compensation? For illustration, the plaintiff charges that the defendant took 2078 boom sticks in the lower lakes; the defendant says that he took only 510. Is it conceivable that it was the legislative intention that no commission should be appointed to determine the value of the property taken, until the title to one or more boom sticks had been litigated and the exceptions which might be taken determined

by the law court? We think not. We think that when the legis-
lature expressly pointed out the manner, in which the plaintiff
should proceed to obtain compensation for the property taken from
it, it provided a full course of procedure and effectual remedy. All
the plaintiff's property of the kinds named having been taken by the
defendant's election, the express power given and duty imposed upon
the commission, to determine the value of the property "so taken,"
clothed.it with authority, as a necessary part of that determination,
to decide what was so taken. Were it otherwise it is inconceivable
that it should be left to inference and that the charter should con-
tain no word indicating it. The charter carefully provides that the
report of the commission may be confirmed, rejected or recommitted
or even a new commission appointed. It contains no word as to
what may be done with the findings of any other tribunal. A
study of the language of the charter satisfies us that the legislature
intended to create and did create one tribunal to settle the issues
of fact between the parties growing out of the defendant's exercise
of its right of eminent domain. In short, if the plaintiff owned the
property in dispute the defendant must have taken it. The charter
so provides. Or to put it the other way, if the defendant took it
the plaintiff must have owned it, for it does not claim to have taken
it as the property of any other person. The title and the taking are
therefore inseparable. The commission which is ordered to deter-
mine the value of the property "so taken" must necessarily deter-
mine what was taken and in so doing determine the question of title.
The defendant is doubtless as willing to give, as the plaintiff is
anxious to receive, speedy compensation for the property taken. No
one can be harmed by a construction which requires all the issues
to be settled by one tribunal at one time, instead of pursuing one
course of litigation to its perhaps far distant close and then begin-
ning afresh upon another. A construction which admits of divided
and protracted litigation is not to be favored, and we find nothing
in the language of the act under consideration to suggest that such
was the legislature's intention.

A case somewhat analogous to the present one is *Schoff* v. *Improve-
ment Co.*, 57 N. H. 110. Plaintiff claimed that his lands had been

submerged by the defendant's dam. Defendant's charter provided that the court upon petition should cause the damages to be estimated by a committee of three disinterested persons, giving to each party a right, if dissatisfied with the report, to apply for a trial by jury. Defendant asked leave to file a plea in bar alleging that the plaintiff was not the owner of the land described in the petition. It was held that this was discretionary with the court, that it could not be claimed as a matter of right, and that, if the legislature had so intended it, it would not have left it to be inferred. The defendant's request was denied and the petition was sent directly to the committee to assess the damages "according to the state of the title found before them."

In the case at bar if the defendant is dissatisfied with the report of the commissioners, it may, for sufficient cause shown to the court, be rejected, recommitted, or a new commission appointed.

The cases cited by the defendant do not militate against the decision we have reached. *Axtell* v. *Coombs,* 4 Green. 322, was a complaint for flowage. The defendant plead in bar that the lands had not been flowed. R. S. 1821, c. 45, § 3, under which the proceedings were had, made provision, before the appointment of appraisers under Public laws 1824, c. 261, for the trial by a jury at the bar of the court of issues raised by the respondent upon a plea denying the title of the complainant to the lands, or claiming a right to flow them without payment of damages or for an agreed compensation. It was held that the defendant might plead any matter showing sufficient cause why further proceedings should not be had, although not enumerated in said section three. There the statute provided for two distinct tribunals, one to try certain preliminary questions, the other to make the appraisal. *Hubbard* v. *Mfg. Co.,* 80 Maine, 40, was another complaint for flowage under R. S. 1883, c. 92. Section seven of that chapter provides that the respondent may plead in bar that the complainant has no title to the lands or any other matter which shows that he cannot maintain the suit, and the next section directs that such issues shall be tried by a jury before the appointment of commissioners under section nine. Again we have express provision made for two separate tribunals, one to try the question of title and the other to assess damages. *Howard & al.* v. *Proprietors,*

12· Cush. 259, was also a complaint for flowage under a statute which directed that matters in bar should be tried at the bar of the court as other issues are .tried at common law, before a warrant issued to a sheriff's jury to assess the damages.   When, however, the statute directed that damages for land taken under the power of eminent domain should be assessed by the county commissioners, the court said:   "The damages will be assessed according to the title proved at the hearing."   *Grand Junction R. & D. Co.* v. *Co. Coms.,* 14 Grey, 553.

We are referred to *Port Huron & S. W. Ry. Co.* v. *Vorheis,* 50 Mich. 506, a petition seeking to condemn' land for railway purposes in which the court say, the defendant's "title could not be litigated in this proceeding before the commissioners appointed by the probate court to determine the compensation to be' made for the taking."   In that . state however, it is settled law that the party seeking condemnation must in his petition distinctly describe the land sought to be taken and designate the owner thereof.   *Chicago M. L. S. Ry. Co.* v. *Sanford,* 23 Mich. 417.   In such case questions of title to the land appropriated may come up in a subsequent proceeding to settle the right to the money awarded.   *Mansfield C. & L. Ry. Co.* v. *Clark,* 23 Mich. 519.   It is true that in *Peoria, P. & J. R. R. Co.* v. *Laurie,* 63 Ill. 264, it was decided that upon a petition for the condemnation of land for railroad purposes the commissioners could not consider the question of title, but only of the extent of the damages; and this for the very good reason that the statute of Illinois required the railway company to allege the ownership in its petition and it was estopped to deny the allegation.

*Ross & al.* v. *Elizabethtown & S. R. R. Co.,* 20 N. J. L. 235, is cited.   The special statute under which the commissioners were appointed in that case provided that the railway company should file in court a description of the land required and that the court should appoint commissioners to appraise the land described.   The court held that the commissioners could not determine questions of title, but if the several owners could not agree upon their respective interests in the sum awarded, they could resort after the award to. a court either of law or equity to have them defined.

The bare statement of the facts of these cases without further comment sufficiently distinguishes them from the case at bar.

*Exceptions overruled.*